## Fletcher v. Gamble.

1. A confession of judgment by the principal debtor, in favor of the creditor, and stay of execution by him until the next term of the Court, without the knowledge or consent of the surety, is not such a giving day of payment as will exonerate the surety from liability to the creditor.

Error to the Circuit Court of Limestone.

THIS was an action of debt, brought by the defendant in error against the plaintiff in error, on a note executed by the defendant, and one Eldred Rawlins, not sued in the action. The defendant pleaded a set-off, with leave to give any matter in evidence which would constitute a good special plea in bar, upon which issue was joined.

From a bill of exceptions taken at the trial of the cause, it appears that the plaintiff read the note in evidence, to the jury, and rested his cause. The defendant then read to the jury the following record of a judgment of the same Court, of the 3d of September, 1839, in favor of the plaintiff, against Eldred Rawlins, and of the stay of execution given by the plaintiff to Rawlins. "James H. Gamble v. Eldred Rawlins. Came the parties, in proper person, and said defendant acknowledges the plaintiff's action, and confesses judgment for the sum of twenty-four hundred and thirty-four dollars and seventy-eight cents,

the amount of the plaintiff's debt. It is, therefore, considered by the Court, that the plaintiff recover of said defendant his debt, in manner aforesaid confessed, and the costs, &c. and the plaintiff stays execution six months."

The defendant further proved, that the said judgment was confessed for the debt due to the said Gamble from the said Rawlins, upon the note which is the foundation of this action, and that the defendant is the surety only of the said Rawlins, in the said note. The defendant also proved that the said judgment was confessed, and the stay of execution given without his knowledge or consent, and that the judgment was confessed by Rawlins, at the request of the plaintiff; which being all the evidence, the Court charged the jury that the said stay of execution did not discharge the defendant from his liability.— To which charge the defendant excepted, and now assigns for error.

HOPKINS & McCLUNG, for plaintiff in error, contended that the judgment confessed, with stay of execution, was such a giving of time to the principal, without the consent of the surety, as would exonerate the surety from liability. That by the stay of execution, the creditor had tied up his hands from proceeding against the principal debtor, for six months; that the surety on the payment of the debt would be entitled to stand in his place, and to conduct the suit for his own benefit, which by this arrangement he was prevented from doing. That if the surety elected to pay the debt, he could not proceed against the principal until the stay of execution was out. That by this postponement of his right to sue, he might be deprived of the extraordinary remedy by attachment.

They contended that the record itself was evidence that there was a sufficient consideration for the agreement to stay the execution; that the whole was one entry, and to be considered altogether, and that if execution had been sued out before the stay had expired, that it could have been superseded. That it was not necessary to show that the surety was injured; it was sufficient that the creditor had made a binding arrangement with the principal, by which time was given without the consent of the surety.

In support of these positions, they cited Theobald on Surety,

Fletcher *v.* Gamble.

227; 10 Johns. 525, 587; 1 Johns. Cases, 137; 3 Bibb, 467; 3 Merivale, 272; 1 Call, 182; 2 ib. 46, 125; 1 Taunton, 159; 15 East, 615; 2 American Dig. 407, 408; 2 Vesey, 540; 1 Mun. 269.

COOPER & ROBINSON, contra, argued, that there was no consideration whatever, for the stay of execution, and that it interposed no obstacle whatever, to any right, either the creditor or surety might have. That by the stay, no time was given; that the execution issued as soon as it could have done, if judgment had been obtained in the ordinary mode. They further insisted that the stay of execution opposed no obstacle to any remedy the surety was entitled to, on payment of the debt. To maintain these views, they cited 18 Johns. 28, 10 Yerger's Tenn. 111; Theobald on Prin. [and Surety, 133, 161, 162; 4 M. & R. 561; 9 B. & C. 707; 4 Yerger, 182; 2 Pickering, 614; 17 Johns. 389; 4 Har. & McHen. 41; 1 Carr. & P. 532; Holt, N. P. 84; 2 Gill & Johns. 230; 16 Johns. 70; 1 Ala. Rep. 523.

ORMOND, J.—The question to be decided is, whether a confession of judgment by the principal debtor, and stay of execution by the creditor for six months, without the knowledge or consent of the surety, will discharge the liability of the surety to the creditor.

The doctrine applicable to this case, is borrowed from Courts of equity, and is thus stated by Mr Justice Story, in his work on Equity. "If a creditor, without any communication with the surety, and assent on his part, should afterwards enter into any new contract, inconsistent with the former contract, or should stipulate in a binding manner, upon sufficient consideration for further delay and postponement of the day of payment of the debt, that will operate in equity as a discharge of the surety. 1 Story's Eq. 321, § 326.

The reason that giving day of payment, operates in equity to discharge the surety, is, that the creditor has, by his own act, deprived himself of the power of doing that, which the creditor has a right to call on him in a Court of Equity to do—to sue the principal. And has, also, deprived the surety of the right of paying the debt, and proceeding, himself, against the principal. The rule is thus concisely stated by C. B. Alexander, in Heath

v. Kay, 1 Y. & J. 434. " In order to discharge a surety, there must be a contract between the creditor and principal debtor, so as to prevent the surety from having the same remedy against the principal debtor, as he might have had upon the original contract."

It might seem, that the mere giving day of payment by the creditor, would not prevent the surety from paying the debt to the creditor, and proceeding immediately against the principal. This is answered by Lord Eldon, in English v. Darley, 2 Bos. & Puller, 61. " If a holder enter into an agreement in the morning, with a prior indorser, not to sue him for a certain time, and then obliges a subsequent indorser in the evening, to pay the debt, the latter must immediately resort to the very person for payment, to whom the holder had pledged his faith, that he should not be sued." However, this may savor of refinement, it is too firmly fixed as law, to be now disturbed; and therefore, the only question is, whether the creditor has, by a binding contract with the principal debtor, without the consent the surety, postponed the payment of the debt, to the prejudice of of any right secured to him.

The counsel for the defendant in error, have argued that the stay of execution allowed in this case, was not obligatory on the principal. We are of opinion, that the confession of judgment by the principal, and stay of execution by the creditor, is but one act, and that the latter must be considered as the condition upon which the former was obtained ; and we cannot doubt, that if the creditor had sued out execution before the time stipulated, it might have been superseded. Was this suspension of the power to issue execution, which we have seen, was obligatory on the creditor, a discharge of the surety? To have that effect, it must be shown that it deprived him of some right he otherwise would have had; for unless this is the case, it cannot operate to his prejudice.

The judgment was confessed during the sitting of the Court, with stay of execution, until the next term ; and if the suit had been commenced in the usual mode, and the defendant had made no defence, nor entered an appearance, no judgment could have been obtained until the period when, by the agreement, the execution could issue. And the result of the agreement was, merely what the silent operation of the law would

Fletcher *v.* Gamble.

have accomplished without the action of the parties ; at least, the judgment could not have been obtained under any possible state of things, sooner—but many casualties may have occurred to postpone it for one or more terms longer.

If the surety had filed his bill in equity, to compel the creditor to sue the principal debtor, or had given notice in writing, under our statute, requiring suit to be brought, in either event the result could not possibly have been more favorable to him than the course pursued by the creditor, which produced a judgment sooner, and the right to execution at least as soon, as in either of the modes just spoken of, without computing the delay, which would be inevitably, consequent, upon the employment of either of the compulsory modes just adverted to.

When the creditor, by an agreement, on sufficient consideration, deprives himself of the power of bringing suit against the principal debtor, he ought not to be permitted afterwards to resort to the surety ; but when the creditor voluntarily does the very thing which the surety could compel him to do, and obtains judgment and execution with no more delay than the law gives to the debor, it is difficult to conceive how the surety could be prejudiced, or how such a proceeding could impair a right, which if exercised, could not possibly have been more favorable to him.

The law on this subject, as applicable to contracts in *pais*, by which time is given to the prejudice of a surety, has no application to proceedings in Courts of justice, unless the creditor gives time beyond the necessary delay of a Court of Justice. Thus in the case of Hulme v. Coles, 2 Simons, 12. Coles had commenced an action against the principal debtor, and without the privity of the surety, took from the principal a *cognovit*, on the 23d June, 1817, for the amount of the debt, with a stipulation, that no judgment should be entered up, or execution issued, until the 1st of August following. It was contended for the surety, that this was a giving of time, to the prejudice of the surety ; to which it was replied, that the judgment was obtained sooner in this mode, than in the ordinary course, and that, therefore, the surety was not prejudiced. The Vice Chancellor declared, that the principle of discharging a surety by the giving of time by the creditor, was a refinement of a Court of Equity, and he would not refine upon it. By the arrange-

ment complained of, time was not given, but the remedy was accelerated.

So, in Jay v. Warren, 1 Carr. & Paine, N. P. C. 532, Chief Justice Abbott held, that in an action by an indorsee against an indorser, the fact that the plaintiff had taken from the acceptor a *cognovit*, giving three weeks time, but which was a period short of that in which judgment could have been obtained against him, did not discharge the indorser.

The case of Nisbet v. Smith, cited from 2 Brown, C. C. 579, does not at all conflict with the principle here laid down.—There, the creditor, on the request of the surety, commenced a suit against the principal, and held him to bail, but afterwards, at the instance of the debtor, waived the proceedings upon his executing a warrant of attorney to confess a judgment; upon the warrant, a memorandum was indorsed, that no execution should issue on the judgment for the term of *three years,* if the interest was regularly paid.

The relief in this case, is not placed by the chancellor on the ground that there was a warrant of attorney to confess a judgment, but that there was a stay of execution for three years, which was a credit for that length of time, without the consent of the surety.

The principle of these cases, evidently is, that the delays of a Court of Justice, are given to the debtor by operation of law, and therefore, an arrangment which results in the obtaining a judgment as soon as it could be obtained without it, is not giving time, because, in point of fact, there is no delay. The creditor, so far from tying up his hands from proceeding against the principal debtor, is pursuing him to judgment as rapidly as possible, and thus obtaining the means of ascertaining the ability of the principal to pay. If, however, he, by contract, restrains himself in the exercise of the means placed in his hands, by the law, for coercing payment from the debtor, the surety is injured, and will be discharged. This is the point on which the case last cited, turned, where the power to issue execution was suspended for three years, whilst the two former are express to the point, that although the creditor may, on obtaining a confession of judgment, or as the condition on which a judgment should be confessed by the principal, agree to wait with, or suspend proceedings against the principal until such time

arrives, it will not be giving time to the principal, unless the suspension exceeds the period within which, by the most vigilant pursuit, a judgment and the power to issue execution, could be obtained.

The whole foundation of this doctrine, of the discharge of a surety, by the creditor giving time to the principal, rests on the right of the surety to compel the creditor to sue. The proceeding then, in this case, was merely what the surety could have compelled the creditor to institute—he has commenced it voluntarily, and in a mode more beneficial, because more speedy than the compulsory mode provided by law; and it would, in our opinion, be most unreasonable to permit the surety to avoid his contract, merely because the compulsory process of the law has not been resorted to, to bring the principal debtor into Court; for that is the objection, when it is fully examined. It is true, that when a contract is entered into, by which the creditor has tied up his hands from suing, Courts will not enter upon the inquiry, whether the new contract is more or less beneficial to the surety, than the original contract; but here, there, is no new contract made, and the delay stipulated for, if it can be so called, is such as the law itself gave to the principal debtor.

It was also insisted, by the counsel for the plaintiff in error, that the surety has a right, while the suit is pending against the principal debtor, to pay the debt, and carry on the suit for his own benefit; or if paid after judgment, to an assignment of the judgment. And to strengthen this view of the case, it was supposed, that if the debtor should do any act while the suit was in progress, which would authorise an attachment under the recent statute of this State, to be issued, that although the surety could not call on the creditor to pursue this extraordinary remedy, he might do it himself, by paying off the debt, and acquiring the right to manage the suit.

The error of this argument, lies in the suppostion, that a surety, by paying of the debt, acquires any rights through the instrument itself, on which he is a surety. By the payment of the debt, the instrument by which it was secured, becomes *functus officio*—the surety does not, in equity, by the payment, become the asssignee of the original creditor, but is merely a simple contract creditor of the principal debtor. This point

was thus ruled, in Copis v. Middleton, 1 Turn. & Russ. 224, and in Hodgson v. Shaw, 3 Myln & Keene, 183, in both of which cases, the question was most elaborately considered by Lord Eldon and Lord Brougham. The same principal was also affirmed by this Court at the present term, in the case of Foster v. The Athenæum. If, then, the instrument by which the surety was bound, is discharged by its payment, it legitimately follows, that any judgment founded on it, must be also discharged; and that if it be paid while a suit is in progress, founded on it, it would be a bar to the further prosecution of the suit. Suppose a judgment against the principal and surety, paid by the surety, no one would suppose that the execution could be re-issued against the principal debtor, for the benefit of the surety, because the judgment would be discharged by the payment.

The general rule, it is true, is, that the surety on payment of the debt, is subrogated to all the rights of the creditor, and to the benefit of all securities which he had obtained from the principal debtor, but this must certainly be confined to such securities as continue to exist after the payment of the debt, and cannot be extended to the *security*, by which the debt is evidenced, as that is destroyed in the very act of its payment.

The decision cited from 1 John. Cases, 137, in which an attachment was allowed to proceed for the benefit of a surety, who had paid the debt to the plaintiff in attachment, appears to have been founded on the attachment law of that State, and is not placed by the Court on any general rule of law.

The case of Peay v. Poston, 10 Yerger's Rep. 111, is, in principle, like this case, and the Court attained the same conclusion we have done in this, but by a process of reasoning, somewhat different; as the Court seem to think that the stay of execution was not an obligatory act; and although we are entirely satisfied that the result is right, we think the stay of execution binding on the creditor, but for the reasons we have given, no infringement of any right of the surety.

Our first impression on the examination of this case, was, that although it was impossible to suppose that the act of the creditor was injurious to the surety, yet, that according to the established doctrine, it was a binding stipulation by the creditor, for delay, without the consent of the surety, and therefore,

he was discharged. But upon subsequent reflection and examination, we became satisfied that no right of the surety was impaired by the transaction between the creditor and principal debtor; and that it would be a solecism to hold that the voluntary performance by the creditor, of the very act which the surety, at considerable delay and expense, might have insisted on being done, would, when done, voluntarily and without delay or expense, discharge the surety.

The judgment of the Court below, is therefore, affirmed.