## BRANCH BANK AT HUNTSVILLE, v. ROBINSON, SHERIFF.

1. K, a debtor to the Bank, proposed in writing to the Bank, to discharge his debt in State stock, in a reasonable time; the Bank acted on the proposition, and modified it by making alterations in its terms, and offered to receive the stock on the terms thus proposed, within one hundred and twenty days. This proposition K, as a witness stated, *agreed* to, but did not notify his assent to the Bank: *Held*, that neither K, or the Bank were bound by the arrangement, and that therefore the sureties of K, were not discharged.

2. An order made by the directors of the Bank, after the time within which the stock was to have been delivered, enlarging " the time for the execution of the *contracts* heretofore entered into between this board and B. P, and John Kinkle, for the payment of their debts to this Bank, in State bonds," does not show, in the absence of proof to the contrary, that the previous proposition had been assented to.

3. A direction by the plaintiff to the sheriff, not to levy several executions which had successively issued, will not render a subsequent execution upon which no

such direction had been given, *dormant*, as against creditors of the defendant, claiming under a deed of trust, made after the last execution came to the sheriff's hands.

ERROR to the County Court of Madison.

This was a motion by the plaintiff, suggesting that the defendant, as sheriff of Madison county, by proper diligence, could have made the money on an *alias pluries* writ of *fierie facias*, which issued in favor of the plaintiff, on a judgment of the plaintiff for one thousand and eleven dollars six cents, besides costs, against John Kinkle, R. B. Purdom and Cortz D. Kavanaugh, which, writ came to the sheriff's hands on the 5th September, 1842. The defendant having filed a plea traversing the facts of the suggestion, the jury, under the charge of the court, found a verdict in his favor.

Pending the trial, a bill of exceptions was taken, from which it appears that the plaintiff having shown the receipt of the *fi. fa.* by the sheriff on the 5th September, 1842, and property in the hands of Kavanaugh, one of the defendants, sufficient to satisfy it, rested his case.

The defendant proved that several executions had previously issued on the same judgment, all of which were stayed by agreement between the bank and the defendants to the execution; that the note on which the judgment was founded, was made by Kinkle, and that Kavanaugh was the second endorser; that all the parties to the note except Kavanaugh, were insolvent.

That on the 9th September, 1842, Kavanaugh, for a valuable consideration, conveyed his property in trust, to secure certain creditors, which was duly recorded. The defendant also read the following letter from Kinkle to the Bank, together with certain extracts from the minutes of the board of directors.

"Extract from the Minutes of the Board:

Branch of the Bank of the State of Alabama at Huntsville, }
                              13th October, 1842.  }

The following communication from Mr. John Kinkle, was submitted and read:

GENTLEMEN—From the enclosed statement, you will perceive that Caruthers & Kinkle and John Kinkle, owe your bank a balance of suspended debt, of $7208 08. This debt has been

dragging along since 1835, and has been reduced from time to time to the amount as shown above. Mr. Caruthers has made no provision for any part of said debt, and the whole has fallen upon me. The last of my means has been applied to the payment of this debt, and I have nothing left me beyond my daily wants. I am extremely anxious to relieve myself of my embarrassments, and place myself right side up once more, and commence anew. Therefore, I make you the following proposition, viz : I will pay you $15,000 in State bonds, at par, out of which I will extinguish the above debt, the bank paying me the balance in money, on the delivery of the bonds at such place as may be agreed upon, your board giving me a reasonable time to carry out the same.

Very respectfully,

JOHN KINKLE.

To the President and Directors of the ⎱
Branch Bank at Huntsville. ⎰

Whereupon, Mr. Bradley offered the following preamble and resolutions, which were adopted :

Whereas, the debts due from Caruthers & Kinkle, to this bank, amounting at this time, including interest and costs, to about $6,423 33 is considered extremely doubtful; therefore, Resolved, that upon the delivery by John Kinkle, of $12,000 of Alabama State bonds, redeemable by this bank to the agent of this bank in New York, John J. Palmer, or to the President or cashier of this bank here, within one hundred and twenty days from this date; that then the cashier of this bank be instructed to give the said Caruthers & Kinkle, credit for them at par, out of which he shall deduct the aforesaid debts of Caruthers & Kinkle, and also a debt of John Kinkle, amounting at this time, with interest and cost added, to about the sum of $864, and pay the said Kinkle the balance in the notes of the State Bank or any of its branches, and no part of said contract shall be executed, until the whole amount of the $12,000 of State bonds, shall have been delivered by the said Kinkle as before stipulated."

Also, the further extract from the Minutes of the Board, on the 16th February, 1843.

"Resolved, That the time for the consummation of the contracts heretofore entered into between this board and Benjamin Patterson and John Kinkle, for the payment of their debts to this

bank, in State bonds, be extended to the 25th December next, (1843.")

It was further proved by Kinkle, that he agreed to the modification of his proposition, as made by the bank, but had never given any notice thereof to the bank. This being the proof, the court charged the jury that if they believed the testimony, they must find for the defendants. To which the plaintiff excepted, and having prosecuted this writ, now assigns it as error.

McClung, for plaintiff in error, contended, that the proof did not show any contract by which the bank had precluded itself from proceeding at any moment to collect its debt from Kinkle, the principal, and that therefore the surety was not discharged; that what the courts considered a contract, was a mere proposition not assented to by Kinkle, so as to be binding on him, and therefore, if it would under any circumstances have been a *contract*, was not under the facts of the case.

That admitting it to be such a contract as would absolve the surety, the sheriff could not avail himself of it; the issue was simply whither the money could have been made by due diligence from Kavanaugh.

Robinson, *contra*, maintained that there was a valid contract between Kinkle and the bank, on sufficient consideration, as the bank was thereby to secure a doubtful *debt*; and that it was a contract, was shewn by the last resolution of the board of directors, in which it was treated as such, and still subsisting. That if the bank could not recover of the surety, it could not recover of the sheriff, as the sheriff would have been a trespasser if he had proceeded to levy or sell, after the surety was discharged. He cited, 1 Stewart, 262; 2 ib. 63; 3 ib. 14; 6 Porter, 166; 8 ib. 108; 3 Ala. 335; 4 Dallas, 168, note 1, 213, 358; 2 Johns. 417; 8 ib. 20; 11 ib. 110; 15 ib. 429; 17 ib. 274; 1 Wilson, 44; 4 Wend. 332; 12 Wend. 405; 5 Cow. 396.

ORMOND, J.—Waiving for the present, the consideration of the question, whether the proposition of Kinkle, if acceded to by the bank, would have prevented the latter from pressing its execution against the former, before a breach of the agreement, we will proceed to the enquiry whether, under the facts disclosed by

the record, there was a valid agreement between the parties, by which the bank was bound to hold up the execution until the time for the delivery of the stock had arrived, and there was a failure to deliver it.

The question of the effect of agreements entered into between the creditor and the principal debtor to the prejudice of a surety has been repeatedly considered by this court; and in a recent case, [Fletcher v. Gamble, 3 Ala. 335,] the doctrine was again examined at some length, and the authorities reviewed. It is there stated that the reason that giving day of payment operates to discharge the surety is, that the creditor has by his own act deprived himself of the power of doing that, which the surety has a right to call on him in a court of equity to do, to sue the principal; and has also deprived the surety of his right of paying the debt, and proceeding himself against the principal. The question then is, whether under the facts disclosed, the bank had deprived itself of the right of coercing payment from Kinkle, for a stipulated period.

It appears from the proof, that the latter made a proposition in writing to the former, to pay his debt in State stock, upon certain conditions; this proposition was not acceded to as made, but a modification was made in it by the bank, which, as modified, it offered to accept. It appears that Kinkle never notified the bank that he accepted the offer made by it, and it cannot require any argument to show that the proposition of the bank was not binding on either until assented to by Kinkle. The latter states, that he agreed to it, but did not notify the bank of his assent. The assent to be binding on Kinkle, must have been such as the bank could have availed itself of and enforced. The mental acquiescence should have been manifested by some act susceptible of proof; otherwise, as it was not legally binding on Kinkle, it could not be enforced by the bank, and was therefore not legally binding on either.

It is further argued, that the subsequent order made by the bank, enlarging the time within which it would receive the stock, is an admission on the part of the bank, that the agreement was consummated. This order was made by the bank on the 16th February, 1843. The period within which the bank, by its first proposition agreed to receive the stock, in payment of its debt, (one hundred and twenty days) had expired on the 10th Februa-

ry, and this was. in law, and in fact, a new offer made by the bank to receive stock in payment of the debt, and the previous proposition is referred to, as showing the conditions on which the offer is made. This proposition, like the former, does not appear to have been acceded to by Kinkle, and, for the reasons already given, was not binding on either party.

Some stress was laid in argument upon the phraseology of the last order made by the directors of the bank, in which the former proposition of the bank is called a "contract." It is very certain that the mere designation of the former proposition as a *contract*, does not make it one, and although it might be conceded, in the absence of proof to the contrary, that this was an admission that the first proposition had been assented to, so as to be binding on both parties, no such result can follow when the contrary is shown to be the fact. To hold otherwise, would be to make this order operate as an *estoppel* by which the bank was concluded from showing the truth.

It was further contended that as several previous executions had issued, which the sheriff did not levy by the direction of the plaintiff, the sureties consenting thereto, that this execution, in reference to which no such direction had been given, had become dormant, and therefore void against junior judgment creditors, and purchasers. In the case of Woods v. Gary, at the last term, the question of what facts would render an execution dormant and void, as to junior judgment creditors, was considered.

We then held, that a direction by a plaintiff to hold up and not to levy an execution, would render it *dormant*, and give a preference to the execution of a *junior* judgment creditor subsequently issued; but that such delay, if not fraudulent in fact, would not impair the *lien* of the execution, when re-issued as against a junior judgment creditor, whose execution was not issued until after the return day of the execution of the elder judgment.

There is no pretence here, that the delay which was assented to by all the parties, was fraudulent in point of fact, nor could it by possibility injure any one who had not then an execution against some of the defendants in the sheriff's hands. The last execution came to the sheriff's hands on the 5th September, 1842, and if no previous *lien* existed, one attached then in favor of the bank. This was five days before the deed of trust relied on was executed, and shows that the bank had the *prior lien*.

It might perhaps be questioned whether the sheriff could interpose such a defence to excuse his neglect; but as that point is not necessary to the decision of the cause, we forbear any comment upon it. Let the judgment be reversed, and the cause remanded.