# REPORTS

OF

# CASES ARGUED AND DETERMINED

# JANUARY TERM, 1847.

## BRANCH BANK AT HUNTSVILLE v. STEELE.

1. Where the transcript of the record of a rejected claim, by a creditor against an insolvent estate, does not show the cause was in progress of being audited previous to the passage of the act of 1843, and no final settlement of the estate by distribution between the creditors, the writ of error is properly sued out against the administrator, and the other creditors are not necessary parties.

2. The reference of the evidence in support of, and against such a claim, may properly be made to the court, instead of trying it before a jury, by consent of parties, and a writ of error will lie from its decision, as on an agreed case.

3. Notice to the cashier of a bank, that its modification of the proposals of a party are acceded to by him, is notice to the bank.

4. A proposal by a debtor, asking the bank to permit him to pay his debt in State bonds, modified by the bank so as to fix the amount of bonds consented to be received, if delivered in a certain period, together with instructions to the cashier to receive the bonds within that time, imposes no obligation on the debtor to deliver the bonds, although, after the modification of his proposals, he informs the cashier that his intention is to carry out the agreement.

Branch Bank at Huntsville v. Steele.

5. A contract, to be valid, when founded on mutual promises, must be binding on both parties, and when there is a want of mutuality, the promise of the party supposed to be bound, is not binding on this account. Therefore, an agreement to receive State bonds at a future day, in discharge of a debt, does not discharge an indorser when the debtor is not also bound to deliver the bonds.

Writ of Error to the Orphans' Court of Madison.

The estate of Henry Stokes being represented as insolvent by George Steele, the administrator, the Bank filed as a claim against the estate, the note of Benjamin Patterson, dated 12th August, 1841, payable one hundred and twenty days after date, to said Stokes, for $4000. The note is indorsed by Stokes and another person, and they waive entirely the necessity for protest and notice.

The administrator filed his objections in writing, to the allowance of this claim, on the following ground, to wit :— Because Henry Stokes was the accommodation indorser of Patterson—that this was known to the bank—that after the making and indorsing of the note, and the acceptance and discount thereof by the bank, to wit, on the 14th of April, 1842, the bank made a new contract with Patterson, whereby further time was given him to pay the same, to wit, from the 14th April, 1842, to the 14th August, 1842—and afterwards, on the 18th of August, 1842, said contract between the bank and Patterson was renewed, by which the bank extended further time to Patterson to pay the debt, to wit, from the 18th of August, 1842 to the 1st January, 1843, and again extended it, giving further time. And all this was done without the consent of Stokes, or of his administrator, whereby the estate is released from all liability on said claim.

At the hearing of the claim, after the note was produced, and read, the defendant proved and read the following letter, dated 12th April, 1842, addressed to the President, &c. of the bank :

Gentlemen—I am indebted to the Branch Bank at Huntsville, to the extent of $21,500, and I am indorser for George

Cox, for $1500. It is well known to your board that I am not able to pay but a small amount of this debt, unless you would consent to receive it in State bonds. I therefore propose to pay the debt, if you will authorize the cashier to enter into an arrangement with me for the redemption of $60,000 of bonds, out of which I will pay the said $23,000.

                              BENJAMIN PATTERSON.

He then proved the following resolution by the bank :

*Resolved*, that upon Benjamin Patterson delivering to the agent of this bank, John J. Palmer, in New York, or to our agent, G. H. Bayard, in Mobile, at any time within four months from date, $48,000 of Alabama State bonds, redeemable by this bank, that the cashier be instructed to take them at par, deducting from the amount $23,000, the amount due to this bank from said Patterson, and George Cox, and pay him the balance, $25,000, in Alabama bank notes. This resolution was adopted 18th August, 1842.

He then proved the following letter from Patterson to the bank, under date of 9th August, 1842 :

Gentlemen—I beg leave respectfully to state, that it will be out of my power to purchase the State bonds, which I engaged to deliver to your bank within the sixty days allowed me. The time is so short that the friends who are willing to aid me in the purchase of the bonds, are not willing to commit themselves unless more time is given, and it is probable I should have to send to England to make the purchase. · I therefore must ask your board to extend the time granted until the 1st of February next, after which time I shall ask no further indulgence. Under the impression that your board would give me more time, I have arranged for the settlement of the debts at Nashville, which I would not have done under any other circumstances.

He then read the following resolution adopted by the bank the 29th December, 1842.

*Resolved*, that Benjamin Patterson be allowed until the 1st day of January next, to consummate the contract entered into with him by this bank, for the purchase of $48,000 of Alabama State bonds, redeemable by this bank, and that the terms stipulated by a resolution adopted by the board, on the 14th of April, last, be complied with by the cashier, whenev-

er the provisions of that resolution are executed by the said Patterson, at any time on or before the first of January next.

He then proved the following letter from Patterson to the bank, under date of 28th December, 1842:

Gentlemen—The time which you gave me to comply with a resolution of your board, passed on the 14th April last, will expire on the 1st of January next.  It has not been in my power to comply with the resolution, but I have now a negotiation in progress which I.hope and believe will enable me to comply, provided your board will extend the time ninety days from the 1st January next.

He then proved the following resolution adopted by the bank, the date of which is not given :

*Resolved*, that sixty days longer be allowed to Benjamin Patterson to comply with the resolution of the board adopted 14th April last.

He then proved that Stokes was the accommodation indorser for Patterson—that Patterson was largely insolvent—that at the date of his first letter to the bank, Alabama bank notes were at a discount of about 15 per cent.—that in August, 1842, they were about 35 per cent. discount, and in December of that year, about 40 per cent. discount—that a few days after the adoption of the first resolution, Patterson applied to the bank to know its action on his proposition and was informed by the cashier what had been done—that Patterson then asked him for a copy, that he might send it to the agent of the bank, to let him know how to act when the bonds were presented—that the cashier gave him a copy, or letter to this purport, i. e., that upon Patterson's presenting such bonds to him, that the agent was to receive them and draw on the bank for the balance left after paying Patterson's debt—that Patterson intended to carry out the contract, and employed an agent who was then going to New York, to buy such bonds if he found it practicable to do so, and sent by him said copy, or letter—that shortly after the adoption of the resolution, in August, 1842, Patterson applied to the cashier, and obtained from him a copy of it, and told him the same thing as before—this copy was sent to Patterson's agent,

It was further proved, that the bank issued notices against Patterson, returnable to the April term, 1842, of Madison circuit court, but withdrew said notices before obtaining judgment. At what time they were withdrawn, or whether served on Patterson was not shown.

The defendant further proved, that the administrator of Stokes was a director of the bank in 1842—that he left the bank and did not vote on any of the propositions of Patterson, saying he would take advantage of any thing the board might do in the matter.

The plaintiff then proved that Patterson had never given notice to the president, or any director, that he accepted their modification of his several propositions. Also, that after the adoption of the first resolution above mentioned, there was no delay in taking the necessary steps to enforce the collection of the said debt, also, that suit was instituted and judgment obtained against Patterson at the August term, 1842, of the county court of Madison, which was the first court after the adoption of the first resolution, to which suit could be brought—that executions were regularly issued thereon, and returned no property found. The plaintiff then offered to prove that no contract or agreement was made by the bank with Patterson to give time of payment, or extend the day of payment, or change the mode of payment, but on the contrary, there was an express verbal understanding, that no time was to be given, nor any proceedings stayed. The defendant objected to this evidence, and the court excluded it.

The foregoing is all the proof exhibited on either side, and it was agreed the court should decide both the law and the facts. The court decided that the estate of Stokes was released from all liability on said note.

The plaintiff excepted to this decision, as well as the exclusion of the evidence above stated, and now assigns the same as error.

C. C. CLAY, for the plaintiff in error, insisted—

1. That no binding contract was entered into by the bank with Patterson. The utmost effect which can be claimed is, that the propositions of Patterson were modified by the bank, but there is nothing to show that this modification was ac-

ceepted by him so as to make the contract complete until the modification was accepted, and the bank notified, Patterson was not bound. [Branch Bank at Huntsville v. Robinson, 5 Ala. R. 623.]

2. The resolutions of the bank do not propose to give any day of payment to Patterson, but merely to accept payment in a particular mode, if made by a certain day. The offer which the court rejected, was to show the express verbal understanding, that no time was to be given, or proceedings stayed. The court thus construed the resolutions as an estoppel, by which the bank was concluded from showing the truth. [Bank v. Robinson, 5 Ala. R. 628.]

3. No delay was given to Patterson. In point of fact he was sued, as soon as the law allowed by the ordinary legal measures and the proceedings prosecuted to insolvency whilst the propositions were pending. In the absence of a request from the surety, no active diligence was necessary, and mere delay will not amount to laches. [1 Story, 321 to 326; 3 Ala. Rep. 335.]

Robinson and A. F. Hopkins, for the defendant in error, argued—

1. That the bank had the capacity to contract in the manner shown by the bill of exceptions. Under the act authorizing the issue of the State bonds, each bank was to redeem those issued by itself. [Dig. 115, §§ 63, 64, 65, 70.] It is no objection to the power, that the bonds were not due. As a general rule a bank has the power to do what is necessary to attain the object directed. [Angell & Ames on Cor. 200; People v. Utica Ins. Co. 15 Johns. 385; 2 Cowen, 699.] A contract like this is not prohibited by public policy, and may be enforced at law, or in equity. [Frost v. Clarkson, 7 Cowen, 25; Latham v. Baker, 6 Term, 67; Wright v. Bell, 2 En. Ex. Rep. 258.]

2. The contract was complete by the assent of the minds of the contracting parties. Patterson made the proposition, and the bank modified it as to the amount to be taken. To this modification Patterson expressly assented. But the assent may also be inferred from the acts of the parties. [Chit. on Con. 6; Train v. Gould, 5 Pick. 380.] The act of Pat-

Branch Bank at Huntsville v. Steele.

terson, in procuring a copy of the resolution, and sending it to New-York, and that of the bank in dismissing the suits at the April term, is susceptible of no other meaning. Again, the second letter of Patterson shows clearly his previous acceptance of the modification by the bank. The fact of Patterson's employing an agent to buy the bonds, seems to be conclusive on the bank. In Everett v. U. S. Bank, 6 Porter, 166, a bank modified a debtor's proposition if the consent of his sureties was obtained, yet the court held that acts done by the principal under his proposition discharged the sureties. The case here is unlike that of Bank v. Robinson, 5 Ala. R. 623, as there was no notice given in that, but here it was given to the cashier, who is the executive officer of the bank. [Angel & Ames on Corp. 244 to 247 ; Everett v. U. S. Bank, 6 Port. 166.]

3. The contract was on sufficient consideration, and therefore binding. A benefit to the party promised or some trouble or prejudice to the other party is a good consideration, [Comyn on Con. 13, 25; Meek v. Smith, 7 Wend. 318 ; Overstreet v. Phillips, 1 Litt. 123.] So any damage to another, or suspension of his right, although no actual benefit accrue to the party undertaking. [3 Burr. 1673; Brooks v. Bell, 18 John. 337.] Nor is it necessary the consideration should exist at the time of the promise if the person to whom it is made incurs any loss or liability. [5 Pick. 384.] Here the benefit to the bank is evident from the depreciation of its paper, as well as the raising securities, carrying interest, with bills bearing none. Independent of this, the security of the debt was a consideration. The taking a new security even without any of these considerations discharges the surety. [Chitty on Bills, 442; 2 Metc. 176; Gifford v. Allen, 3 Ib. 255 ; English v. Darley, 2 B. & P. 61 ; Gould v. Robson, 8 East, 575; 18 Ves. 21 ; 1 Brock. 220; 2 Bro. C. 580, 3 Howard, U. S. 510; Bank U. S. v. Hatch, 6 Pet. 250.] If the debtor's own note or bill, payable at a distant day, will discharge his surety, certainly his promise to pay in a different way, will do so too. The confession of a judgment with a stay has this effect. [Fletcher v. Gamble, 3 Ala. Rep. 335.] Another consideration which may be adverted to, is the pay-

ment of other debts by Patterson, on the faith of this contract—thus diminishing the general fund to pay all creditors. So also the promise itself is a consideration. [Briggs v. Tillotson, 8 John. 236 ; Chitty on Con. 15 to 17.]

4. The surety has the right to stand on the very terms of his contract, and a change in any material part of it will discharge him. [McKay v. Dodge, 5 Ala. Rep. 388 ; Miller v. Stewart, 9 Wheat. 702.] Here, Patterson's debt was payable in money, and the new contract stipulates that it shall be paid in State bonds. [1 Paine's C. C. 305 ; 5 Ala. 388 ; 9 Wheat. 680 ; 4 Porter, 52.]

5. So if a creditor does any act which impairs a security held by him, or which lessens or abridges his rights against the principal, this will discharge the surety ; as if the plaintiff puts execution in the sheriff's hands, and then withdraws it. [7 Leigh, 259 : 2 Stewart, 189 ; 2 Bro. Ch. 581 ; 2 Ves. 544 ; 1 Mumf. 269 ; 1 Call. 18 ; 10 John. 587 ; 3 Bibb, 469,] and it is the same when the creditor stays proceedings before judgment. [Craig v. Cox, 2 Bibb, 399 ; Comegys v. Cox, 1 Stew. 262 ; 3 Ib. 14 ; 2 Ib. 63 ; 1 Mumf. 45.] The effect of the contract between Patterson and the bank was to tie up the latter from proceeding against the former. [Black v. Zachery, 3 Howard U. S. 510 . Myer v. Wells, 5 Hill, 463 ; Comegys v. Booth, 3 Stewart, 14.]

6. The parol evidence was clearly inadmissible to explain the written contract evidenced by the resolution of the bank. [1 Phil. Ev. 555, 561, 567 . Coleman v. Crumpler, 2 Dev. 508 ; King v. Baldwin, 2 John. Ch. 557 ; McCay v. Moss, 5 Porter, 88 ; Mead v. Steger, Ib. 498 ; Paysant v. Ware, 1 Ala. Rep. 161 ; Dozier v. Duffee, Ib. 320 ; Beard v. White, Ib. 436 ; Litchfield v. Falconer, 2 Ib. 280 ; Rhodes v. Sherrod, 9 Ala. Rep. 63.]

7. By the agreement the court was substituted for the jury, and as the jury would, under the evidence, have been warranted in finding for the defendant, the court will not disturb the judgment. It is not an agreed case—no facts are agreed on by the parties, but by the stipulation the court is substituted for an arbitrator.

8. The creditors in whose favor judgment was given for the distribution of the estate, are necessary parties to this

writ of error, and unless thus amended, it should be dismiss-
ed.

GOLDTHWAITE, J.—1. Previous to considering the
principal question presented here, it is proper to clear the
way, by disposing of the matters which are urged against its
examination. The first of these is, that the creditors whose
claims were allowed against the estate, are necessary parties,
and unless the writ of error is so amended as to include them,
it should be dismissed. The transcript does not show when
the estate was *adjudged* insolvent, though it seems the ad-
ministrator *reported* it to be so in June, 1842. In Martin v.
Baldwin, 7 Ala. R. 923, we held, that if an estate was in pro-
gress of being audited, when the act of 1843 was passed, the
previously existing law, would govern, but if the initiatory
steps only had then been taken, all the subsequent proceed-
ings should conform to that act. It does not appear here,
what proceedings had taken place with respect to the audit-
ing of the claims in general against this estate, but with re-
gard to this particular claim, the court and parties seem to
have acted under the last act. Hence we conclude that the
estate was not in progress of being audited when the act of
1843 was passed. Under that act, the administrator is the
only necessary defendant in error, when the writ of error is
prosecuted previous to the final settlement by a creditor whose
claim is disallowed. Although from some parts of the re-
cord we might infer that the estate was settled, so far as to
declare a dividend between the creditors, yet even that does
not appear from any judgment of the court. We must there-
fore conclude, as we did in the case just cited, that the final
action of the court has not yet been had on the settlement,
and in this condition of the record, there is nothing to show
the necessity to make the creditors parties to the writ of
error.

2. Another objection to reviewing the judgment of the
court is, that in making it the judge acted rather as an arbi-
trator chosen by the parties, than as a judicial officer, and
therefore that his decision can no more be reviewed, so far
as the facts and law of the case, than the verdict of a jury in
the absence of exceptions. We can only say, in answer to

this, that the judgment, if that of an arbitrator, has no place on the records of the court, without some action by the judge. But we look upon the matters stated in the bill of exceptions as the agreement of the parties, to dispense with a jury trial, and to submit the facts to the court for its decision, in the same manner as if presented by an agreed case. We are not aware there is any valid objection to such a mode of proceeding, and have no difficulty in pronouncing the judgment in this form capable of revision.

3. Coming then to the consideration of the principal question, we cannot concur in the view of the plaintiff, that it is settled by the former decision of Bank at Huntsville v. Robinson, 5 Ala. Rep. 623. The question was not there discussed by the court, but its decision turned on the ground that no notice was given to the bank, that the debtor assented to its modification of his proposals. In the present case it appears the cashier of the bank was informed by the debtor, that he intended to carry out the proposal as modified by the bank. The cashier of a bank is its executive officer, by whom in general its correspondence and intercourse with others is usually conducted, and a notice to him is substantially a notice to the corporation. [Everett v. U. S. Bank, 6 Porter, 166.] So far then as the assent of Patterson to the modification of his proposals by the bank, and a notice of that assent operates on the consummation of this agreement, we must consider it complete.

4. And this makes it essential to inquire—which we declined to do in the case just cited—what the agreement between the bank and its debtor was, and whether any, and what, legal obligations were imposed by it on either party. It is contended that Patterson, by it, was bound to deliver to the bank $48,000 in State bonds, and that the bank, on his default, was entitled to an action against him. We take a different view entirely of what passed between him and the bank, and think that no obligation was imposed upon him, or intended to be assumed, to furnish the bonds. In our judgment, this is apparent from his letters to the board of directors. He does not approach the bank as the holder of securities which he wishes to dispose of, and which the bank is desirous to buy, or bound to redeem at a future day, but as a

debtor to the institution, absolutely unable to meet his engagements, unless through the aid of means from his friends he may be enabled to obtain the control of State bonds. Even this cannot be done unless the bank will consent to furnish its bills to a larger amount than the sum for which he proposes to extinguish his debt. No fair construction of his proposals, in our judgment, can make it amount to an engagement on his part, absolutely and unconditionally to furnish $60,000, or indeed any other amount of State bonds. His object seems to have been—and none can doubt the fairness and integrity with which it was entertained—to try the market in New York, or elsewhere, to see if the monies to be paid out by the bank, would not furnish either the means or inducement to bond holders to make advantageous contracts with him. But it seems evident to us, that he never contemplated that he was incurring, either for himself or for those who were to aid him, any responsibility in the event he did not succeed in procuring the bonds. In his second letter, when asking the bank to extend the time for him to endeavor to procure the bonds, he says if he does not deliver them at the expiration of that time, he will ask no further indulgence. If bound to deliver them, his language instead of referring to proceedings or debts already due, would more appropriately have spoken of the mode of ascertaining and settling the damages resulting from his breach of an absolute agreement. We can come to no other conclusion that the proposition is to be regarded as one for love and favor to be extended to Patterson, by the bank, and that if his proposition had been accepted in the precise terms as made, that it was in contemplation of either party to bind him to procure the bonds. The modifications proposed by the bank merely lessened the amount to be paid in the event the bonds were produced, and fixed a period when its lenity should cease—without in any manner changing the legal features involved in the negotiation.

5. Having thus ascertained the proposal made by Pattterson imposed no legal obligation on him, to furnish the bank with the bonds within the period fixed by the bank, it remains to inquire whether this circumstance prevented the negotiation from assuming the nature of a contract. That it

does, we think will be evident when we advert to the rule, that all contracts must be mutually binding on each of the contracting parties, so that either may have an action on it. [Chitty on Con. 3.] The insufficiency of this agreement as a contract, will be apparent if we consider what would be the form of a declaration, if Patterson was suing the bank for refusing to receive the bonds after he had obtained the control of them. As the supposed contract is not under seal, or of that class which imports a consideration, it would be essential to state one. Considerations are said to be *executed*, *executory*, *concurrent*, and *continuing*, but as it is necessary for the defendant to show, the bank was bound when this agreement was made, it will be important only to consider how an executory and concurrent consideration must be stated. It is said, the consideration and the promise of the defendant, are two distinct things, and in order to show that the plaintiff possesses a right of action, he must aver the performance of the consideration on his part. [Chitty on Pl. 324.] But here we may throw aside the want of performance, as that does not enter into the question whether a contract was actually made. As nothing was paid at the time of the agreement, the contract can only be sustained on the notion of mutual promises; that is, a promise by Patterson, on the one side, that he would furnish the bonds, and a promise by the bank to take and pay for them, at the stipulated time. The plaintiff's promise, in such cases, may be said to be *executed*, but the thing to be done is executory. It is evident then, in all cases where the consideration is the mutual promise of each to the other, the promises must be concurrent, or obligatory on both at the same time, to make the promise of either binding, and they must be so stated in pleading. [Chitty on Pl. 325.] According to our judgment of the transaction between these parties, Patterson could not truly aver, that in consideration the bank had promised to accept and pay for the State bonds, he at the *same time* promised to purchase and deliver them. The view now taken is fully sustained by decisions which seem never to have been questioned. In Livingston v. Rogers, 1 Caines, 584, a declaration was held bad, where one promise was laid as the consideration for another, but was said to be made *afterwards*, although

on the *same day.* In Cook v. Oxley, 3 Term, 653, the defendant proposed to sell certain goods to the plaintiff and gave him until the hour of four in the afternoon of the same day to determine if he would take them. Within that time the plaintiff determined to purchase, and gave notice to the defendant, who refused to sell. The court would not hear argument from the defendant, and said the agreement was all on one side, and therefore *nudum pactum.* In Burnell v. Bicos, 4 John. 235, the defendant agreed, in writing, to give the plaintiff the *refusal* of a farm on certain terms. The court held, there was no consideration for the defendant's promise, because the plaintiff did not promise, and was under no obligation to take it. See also, Buller's N. P. 146; Hobart, 88. That the want of mutuality in an agreement prevents it from being a contract is otherwise illustrated by decisions not so entirely apposite as those previously cited. Thus in Philpot v. Briant, 4 Bing. 717, an executrix promised a creditor, if he would delay proceedings, she would pay the interest of the debt from her own income ; delay was given, and interest paid out of her private income, but this was held not to discharge the surety, as the promise to pay out of her own estate, was not binding on the executrix—it not being in writing. So in Lees v. Whitcomb, 5 Bing. 34, s. c, 3 C. & P. 289, an agreement to remain with A B two years, for the purpose of learning a trade, was held not to be binding for the want of an engagement on the part of A B to teach.

Having thus shown the agreement to have no binding effect on the bank, as a contract, it is unnecessary to pursue the examination of the case further, as this conclusion disposes of every question not otherwise settled. The result is, that the judgment must be reversed, and in conformity with the general practice of this court, the cause will be remanded.