<hr/>

THE DAYTON, WATERVLEIT VALLEY AND XENIA TURNPIKE COMPANY v. ADAM COY.

The defendant signed a written instrument previous to the incorporation of the plaintiff, and bound himself to make the turnpike, known as the Dayton, Watervleit and Xenia Turnpike Road across his farm, at the engineer's estimate, provided it crossed in a specified direction, or if he could not make it, to "pay for it at the same rate, and take the same in stock in said road, and have it ready by the time the rest of the road is ready for travel." The company when afterward incorporated, located the road across the farm of the defendant, in the direction specified in the instrument, and then built the road across the farm of the defendant, and tendered stock to the amount of the engineer's estimate for the defendant, and demanded payment. Held, that the contract was not binding on the defendant for want of mutuality.

ERROR to the court of common pleas of Greene county, reserved in the district court.

This case comes to the court upon demurrer to the petition. The allegations of the petition are as follows:

That certain (named) persons associated themselves together on the 25th of March, 1854, to form an incorporated company for the purpose of constructing the Dayton, Watervleit Valley and Xenia Turnpike Road; that to induce them to perfect such organization and to obtain the construction of the road, and to procure to himself the stock, dividends, profits, etc., to accrue to him from and by the said organization, and the construction of the road near to and across his premises, the defendant, on the day aforesaid, executed and delivered to the persons named, his agreement in writing, as follows:

"I, Adam Coy, bind myself to make the turnpike known as the Dayton, Watervleit Valley and Xenia Turnpike Company, across my farm, provided it cross my farm in front of my house, where my son, David Coy, lives, it being the south side of said house and barn, at the engineer's estimate; or if I can not make it, I will pay for it at the same rate and take the same in stock in said road, and have it ready by the time the rest of the road is ready for travel. Whereunto I set my name this 25th day of March, A. D., 1854.

(Signed) ADAM COY."

That afterward, on the 27th day of April, 1854, the said named persons, in pursuance of the aforesaid purposes and inducements, procured, under the law, a certificate of incorporation; and that being thus incorporated as the Dayton, Watervleit Valley and Xenia Turnpike Company, they proceeded, on the 16th day of May, 1856, to locate the road according to law, and as agreed with Coy, and to construct the same as contemplated; and expended a large sum of money thereon, with the full knowledge of the defendant, and greatly to his advantage; and had it completed and ready for travel, except the part across the farm of defendant, being 213.8

rods; and that the engineer's estimate for constructing the same was $828.30, of all which the defendant had notice. That the defendant, though often requested, refused to construct the road or any part thereof across his farm. That the plaintiff thereupon constructed the same across said farm at an expense of $828.30. That in October, 1858, the plaintiff tendered stock to the defendant to that amount, and then demanded payment by said Coy of said sum, which stock he refused to accept and also refused to pay the amount.

Judgment is thereupon demanded for the sum of $828.30, with interest from September 30, 1858.

In the court of common pleas, the demurrer to the petition was sustained and judgment rendered for the defendant. To reverse that judgment, a petition in error was filed in the district court, and the questions arising on it were reserved to this court.

*Houk & McMahon*, for plaintiff in error :

1. The contract of the defendant was evidently made in anticipation of the organization and incorporation of the company and for its exclusive benefit. He designates it, in his written promise, as the " Dayton, Watervleit Valley and Xenia Turnpike Company," which name it subsequently assumed upon incorporation ; and agreed to build, or pay for building, a portion of the road across his farm, taking his pay, in either event, from the company in its stock. This is, in our judgment, a contract to *take stock in the road,* equal to the cost of constructing the same across his farm ; such cost to be fixed by the engineer's estimate. It was a contract by which the defendant secured in addition, if he desired, the probable profits to result from constructing the same, being the difference between the cost of building it and the engineer's estimate.

Agreements to take stock and pay for the same in labor, materials, etc., are valid; being, in cases like the present, equivalent to the money. *Philadelphia and West Chester Railway* v. *Hickman,* 28 Penn. 318; *Clark* v. *Farmington* (*Wisconsin*), West. Law Monthly, 1860, 401.

2. Being a contract to take stock in the road, a sufficient consideration to support it in the beginning is found in the anticipation of dividends and profits in tolls; and it becomes a binding contract, if there are proper parties, from the time of subscription; acceptance by the other party being presumed. There was an additional consideration in this instance, being the location of the road upon a designated route across the defendant's farm. In order to compel the defendant to build the road it was necessary to locate it as he had stipulated; but this proviso, although material, being only a part of the consideration, gave him no power to annul the contract at his option at any time before location, but only in case of a location elsewhere. *Commissioners of Canal Fund* v. *Perry*, 5 Ohio Rep. 57; *State of Ohio* v. *Collins*, 6 Ohio Rep. 142; *Milford, etc., Turnpike Co.* v. *Brush*, 10 Ohio Rep. 111; *Henderson and Nashville R. R. Co.* v. *Leavett*, 16 B. Mon. 358; Angell and Ames on Corp. (6th ed.), ch. xv, secs. 517, 519.

3. The contract being founded upon sufficient consideration, and being in other respects lawful and binding, the remaining inquiry is in regard to parties. It is objected that there is a defect in this particular, based upon the fact that the plaintiff was not incorporated at the time the promise was made.

Upon this branch of the case we submit that a promise made to individuals, upon a good consideration, to induce the organization of an incorporated company, and the construction by it of a road advantageous to the promisor, having been accepted and acted upon by them, for the same purposes, instead of being forfeited or destroyed by the act of incorporation which executes the intentions of both parties, rather derives from it additional vitality.

This writing may be considered in two lights:

*First.* As a contract with the person named and to whom it was delivered, the benefits to accrue to the corporation in contemplation by both parties : or,

*Second.* As a continuing offer in their hands made by the defendant to the corporation, which became a contract between

him and it, as soon as it came into existence under the law and accepted the offer. This acceptance, as was before stated, will be presumed, in the absence of proof. *Mitchell's Lesses v. Ryan*, 3 Ohio St. Rep. 377.

In either view the objection of the defendant falls to the ground. For if we regard it as a contract with the persons to whom it was delivered, it had proper parties, as they were in existence and capable; and if we construe it simply as a continuing offer, not binding until accepted by the corporation after it came into existence, the objection is entirely waded. And whether we regard it as a contract, or as an offer not binding until acceptance, the action was properly brought by the corporation in its own name. In the one view it was the actual party to the contract by acceptance; and in the other was the real party in interest, and for whose benefit the bargain was made; being thus entitled, under the code and the rulings in the cases in Ohio, heretofore cited, *Commissioners of Canal Fund v. Perry*, 5 Ohio Rep. 57; *State of Ohio v. Collins*, 6 Ohio Rep. 126; *Milford and Chillicothe Turnpike Co. v. Brush*, 10 Ohio Rep. 111; and in *Thompson's Adm'x. v. Thompson*, 4 Ohio St. Rep. 323, to institute the suit in its own name.

The weight of authority is strongly in favor of the positions above taken. We cite: Angell & Ames on Corp., secs. 523, *et seq.;* Redfield on Railways, sec. 57; *Kidwelly Canal Co. v. Raby*, 2 Price (Ex.), 93; *Selma and Tennessee R. R. Co. v. Tipton*, 5 Ala. 786; *Stanton v. Wilson*, 2 Hill, 153; *Hamilton Plank Road Co. v. Rice*, 7 Barb. 157; *Eastern Plank Road Co. v. Vaughan*, 20 Barb. 156, 4 Kernan, 547; *Poughkeepsie. etc., R. R. Co. v. Griffin*, 21 Barb. 467; *Buffalo and N. Y. City R. R. Co. v. Dudley*, 4 Kernan, 337; *Lake Ontario R. R. Co. v Mason*, 2 Smith, 453; *Hartford and New Haven R. R. Co. v. Kennedy*, 12 Conn. 500; *Danbury and Norwalk R. R. Co. v. Wilson*, 22 Conn. 435; *Vermont Central Railway Co. v. Clayes*, 21 Vermont, 30; *Delaware and Atlantic Railway v. Irich*, 3 Zabriskie, 321.

4. The conduct of the defendant was for a purpose. * * * Under all the circumstances it seems clear to us that the ac-

tion of the defendant in making and delivering this paper, at the very least, amounts to a standing and continuing offer upon his part to the corporation to build the road across his farm, provided the same was located as he desired. There is no allegation that this offer was retracted before acted upon and accepted by the company. On the contrary, it is alleged that the persons named relying upon the defendant's promise proceeded to organize the company; and that the company thereupon proceeded to locate the road as agreed with him, and to build the same up to his farm, at great expense, and with notice to him. Being such offer to build the part across his farm, provided it was located there as desired, it became an accepted offer, or in other words, a contract, the moment that the company complied with the proviso, and its binding obligation dated from that time. The want of parties can not be urged as an objection in this view of the case. The offer needed but one party; and when accepted, it became a contract by the acceptance of the corporation then in existence. *Kennaway* v. *Treleavan*, 5 M. & W. 501; *Mosley* v. *Tinker*, 1 Cr. Mees. & Ros, 692; *Boston and Maine R. R. Co.* v. *Bartlett*, 3 Cush. 224; *Connecticut and Passumpsic R. R. Co.* v. *Bailey*, 24 Vt. 478; *L'Amoureux* v. *Gould*, 3 Selden, 349; *Cumberland Valley Railway* v. *Baab*, 9 Watts, 458; *Henderson and Nashville Railway* v. *Leavett*, 16 B. Mon. 358.

*B. Nesbitt*, for defendant in error:

The obligation upon which suit is brought bears date March 25, 1854. The certificate of plaintiff's incorporation is dated April 27, 1854. The contract, therefore, was not made with the plaintiff, because the plaintiff was not in existence—was not authorized to contract—until after the contract was made.

If the defendant is at all liable upon it, his liability must rest upon some act or promise of his to the plaintiff since the plaintiff became authorized to make a contract. The record discloses neither a promise nor act of the defendant binding him to do the work or pay for it. The case is one in which there was no mutuality, and, from its very nature, could not be.

The courts refuse to enforce such a contract, unless tho party who may have made a subscription of stock to a corporation, *before* it was legally chartered as such, either permitted his name to be used in the act of incorporation, or after the incorporation acknowledged his liability, by a payment of part, or a promise to pay, or giving his note or other written obligation to pay. Angell & Ames on Corp., sec. 255, p. 271; *Phillips Limerick Academy* v. *Davis*, 11 Mass. 113, and the cases there cited; *Amherst Academy* v. *Cowles*, 6 Pick, 434–6, where the authorities are examined.

GHOLSON, J.—The petition in this case seeks to recover a specific amount, as a debt becoming due on the tender of the stock. It states that the stock was tendered, payment of the sum which, by the contract, was to be given for the stock demanded, and that the defendant refused to accept the stock and to pay the amount so demanded, and a judgment is therefore asked for that amount and interest.

Regarded as an action of debt—as an action to recover a certain sum—it is questionable whether it could be maintained—. the contract being very clearly executory, and no title to the stock having passed, in fact neither the company nor its stock being in existence at the time of the contract, and no assent of the defendant at any time thereafter to become a stockholder being shown.

The rule in England appears to be, that on an executory contract for the sale of property, where an agreed price is to be paid on the transfer of a title to the property, the remedy for a refusal to complete the contract by acceptance and payment, is an action for the damages sustained thereby. *Laird* v. *Pim*, 7 Mees. & Welsb. 474, 478. The principle appears to be, that a party can not retain the title to the property and also recover the price, and to pass the title the assent of the other party is requisite. This assent may, in a proper case, be enforced in a court of equity; but in a mere action on the contract to recover the price, that can not be done. There are American cases which hold that in such cases, after a tender, an action to recover the price, may be maintained. *Alna* v.

*Plummer*, 4 Greenl. 258; *Bement* v. *Smith*, 15 Wend. 493.
It was said of these cases, in *Shannon* v. *Comstock*, 21 Wend.
457, 460, by Cowen, J.: " I admit that in some cases, where
property is so tendered, and the tender is not withdrawn, the
price may be recovered; but this is on the ground that the
thing sold has an independent existence, and the corpus not
being perishable, and having legally passed by the tender and
subsequent recovery, may still be actually delivered over
whenever the vendee shall demand it." The reasoning of the
court, in *Thompson* v. *Alger*, 12 Metc. 428, and in *Allen* v. *Jar-
vis*, 20 Conn. 38, appears to sustain the English rule, though
an exception was allowed under the circumstances of those
cases. The language of the court, in *Sawyer* v *McIntyre*, 18
Vt. 27–31, accords with that rule. The case of *Garrard* v.
*Dollar*, 4 Jones L. 175, is to the contrary. But it is not ne.
cessary that we should pass on this point. The facts are
stated in the petition, and an amendment claiming damages,
instead of a specific amount, if necessary, could be readily
made. Indeed, on demurrer, the difference between the
demand of a specific amount as a debt due and the same
amount as damages for the breach of the contract, might not
be regarded as fatal to a petition. We therefore proceed to
consider the question, upon which the right of the plaintiff
to maintain the action depends.

If the instrument sued on in this case showed simply an
agreement on the part of the defendant to accept and pay for
stock in a turnpike company, thereafter to come into exist-
ence, and which could not be a party to the instrument, or
be bound to furnish the stock, there could certainly be no
contract binding on the defendant for the want of mutuality.
A written stipulation to take stock in a turnpike company
which is not in existence, can not be enforced by the contem-
plated turnpike company when it comes into existence, be-
cause it would be under no obligation to do the act which is
the consideration for the promise of the other party, to fur-
nish the stock. But it is said that the objection of a want
of mutuality " must be confined to those cases where the want
of mutuality would leave one party without a valid or avail-

able consideration for his promise." *Arnold* v. *Mayor of Poole*, 4 M. & G. 861–896. And to this it has been replied, that "It is difficult to conceive a case where there should be a valid consideration on both sides, and yet a want of mutuality." Smith on Contracts, 88, note. "Every contract consists of a request on one side, and an assent on the other." *Jackson* v. *Galloway*, 5 Bing. N. C. 75. "These are the terms of mutuality : if either are absent, there is no contract. The request may be express or implied, and likewise the promise or assent. Both are far oftener implied than expressed in simple contracts. The cases in which the request or the promise are express, require little comment. The ordinary meaning of the words used will determine the legal effect, according to the established rules of construction. The assent to the contract must be to the precise terms offered." "A contract," says Pothier, "includes a concurrence of intention in two parties, one of whom promises something to the other, who on his part accepts such promise." Hence is assent or acceptance indispensable to the validity of every contract; for " as I can not " continues Pothier, " by the mere act of my own mind transfer to another a right in any goods, without a concurrent intention on his part to accept them, neither can I by any promise confer a right against any person until the person to whom the promise is made has, by his acceptance of it, concurred in the intention of acquiring such right. Wherever there is not assent, express or implied, to the terms of the proposed contract by both parties, there is no mutuality, and no contract." Smith on Contracts, 88, note.

" In contracts, where the promise of the one party is the consideration for the promise of the other, the promises must be concurrent and obligatory upon both at the same time." *Nichols* v. *Raynbred*, Hobart, 88*b* ; *Tucker* v. *Woods*, 12 Johns. 190, 192; *Reep* v. *Goodrich*, 12 Johns. 397; 1 Chitty on Pl. 325; Story on Cont., sec. 448; Addison on Cont. 34. But where the consideration is not the promise, but the doing of some act, which being done would constitute a valid consideration, then assent to the contract may be shown by doing

the act. The promise to pay a certain sum on the doing a certain act, which will benefit the promisor or prejudice the promisee, implies a request to do the act, and unless such request be withdrawn before it is complied with, the doing the act is an assent, and the promise becomes obligatory: In such a case, performance is an assent to the terms proposed. But suppose the terms proposed were such, as to require the doing of one thing and a promise to do another thing, then in the language which has been quoted, " the assent to the contract must be to the precise terms offered." If there was no mutual promise there would be no contract, but if the thing should be done and a benefit derived therefrom, the party might be charged on an implied agreement to pay the value.

We think it doubtful, whether a fair construction of the instrument under consideration shows a request to locate the road across the farm of the defendant. The contingency that it might be so located, was contemplated, and in the event that it should be, then, the defendant bound himself to build the road or pay for the building, at the engineer's estimate, and take the amount in stock. But there was not, nor could there have been, any promise then made by the plaintiff to permit the building of the road or to deliver the stock. The case would then fall within the principle of *Cooke* v. *Oxley*, 3 T. R. 653, in which there was a proposal to sell goods to the plaintiff, and an agreement to give him a certain time to determine if he would take them. He determined to take them within the time and gave notice thereof, requested a delivery of the goods and offered to pay the price, but it was held, that he not being bound by the original contract, there was no consideration to bind the other party. This principle was acted on in *Burnell* v. *Johnson*, 4 Johns. 235. In the case of *Branch Bank at Huntsville* v. *Steele*, 10 Ala. 915, there was an agreement by the bank to receive state bonds at a future day in discharge of a debt, but the debtor was not also bound to deliver the bonds, and the contract was held to be not binding on the bank for want of mutuality, and therefore di not discharge an indorser who relied upon it as a defense.

Assuming, however, that the locating the road across the farm of the defendant, entered into the consideration, it was, as admitted by the counsel for the plaintiff, only a part of the consideration, and a silent assent by the performance of that part of the consideration, would not, according to the principles above stated, suffice. It may be true, that " if a contract has been executed by the performance of the act forming the consideration for the promise, then it is no answer to an action, to say that the plaintiff was not, by the terms of the original contract, *bound* to do the act, and there was consequently no mutuality of obligation." Addison on Contracts, 35. But this rule does not appear to be applicable, where the act done only constitutes a part of the consideration and shows no assent to the terms of the contract. The objection of the want of mutuality is avoided, because the contract shows a request to do the act and an agreement to be bound upon its being done, and the doing the act is an assent to those terms. This can not be said, where the terms of the contract require more than a silent performance of a part of the consideration, and shows that there was no intention to be bound, unless there was a mutual obligation to perform the other part of the consideration, in its nature concurrent. The rule certainly can not apply in this case, where that which is alleged to have been part of the consideration and to have been performed, does not necessarily connect itself with the defendant, and may or may not have been done with a view of assenting to the promise of the defendant. . Without something more than the act of locating the road across the farm of the defendant, it would be impossible for the defendant to show that it constituted an agreement on the part of the turnpike company. Had the stock on the completion of the road advanced to above its par value, and the defendant been desirous to procure stock equal to the amount of the estimate for building the part of the road described in the instrument, he certainly could not sustain his claim by showing the written instrument and the fact of the location of the road. He would be bound to show assent in some other way, and other evidence of assent being requisite

to bind the company, it is also requisite to bind the defendant.

We have been asked by the counsel for the plaintiff, if we found there was no mutuality in the contract, still, to look at the conduct of the defendant—his purpose in the execution of the instrument. But we do not see how we can look at the conduct of the defendant with any other view, than to ascertain whether he has entered into a contract. In such a case as this, it is not our province to decide as to the propriety of the conduct of the party. We have only to inquire whether he has incurred a legal obligation, and being of opinion for the reasons which have been stated, that he has not, the judgment of the court of common pleas will be affirmed.

Judgment affirmed.

SUTLIFF, C.J., and PECK, BRINKERHOFF and SCOTT, JJ., concurred.