## BOGGS' Adm'r v. BRANCH BANK AT MOBILE.

1. When an estate was declared insolvent, previous to the act of 1843, but no progress made in the settlement until afterwards, the subsequent action of the court should be regulated by the last act.

2. When a claim has been allowed, either by the orphans' court, or by commissioners sitting by commission as the orphans' court, if no exception is taken, it will be presumed on error, that proof was made of due presentment.

3. Under the act of 1843, partial settlement may be made, and decrees in favor of creditors of an insolvent estate, enforced by execution.

4. If no objection is taken by the administrator, to the action of the orphans' court admitting a claim, he will be understood as waiving all objections ; and a paper found in the record, making objections to the claim, but not shown to have been brought to the notice of the orphans' court, or a demand of an issue by the administrator, cannot be noticed by an appellate court.

5. When the record does not show that the plaintiff to whom a claim is decreed, is not the proprietor, the presumption will arise, the necessary proof of ownership was made.

Writ of Error to the Orphans' Court of Perry.

H. DAVIS, for the plaintiff in error.
BROOKS and JOHN, for the defendant in error.

COLLIER, C. J.—In 1841, the plaintiffs reported the estate of their intestate insolvent, and publication was made requiring all claims to be filed on the first Friday in May, 1842; but no proceedings appear to have been had upon this order. Afterwards, on the first of May, 1843, the judge of the circuit court commissioned three individuals to make a settlement of the estate under the rules and regulations *then* prescribed by law. These commissioners made publication from time to time, and received, heard proof of, and allowed claims against the estate. Among these claims were two in favor of the Branch Bank, amounting in the aggregate to the sum of $9,324 20, on which it was adjudged that $4,662 10½ should

be paid, and that the bank should have execution therefor. The record shows that the estate was not finally settled.

It is insisted that it was irregular to make a partial distribution of the intestate's estate under the act of February, 1843, " to amend the laws now in force in relation to insolvent estates." [Clay's Dig. 192, *et seq.*] In Martin, adm'r, v. Baldwin, 7 Ala. Rep. 923, it was determined, that, where an insolvent estate was in process of being audited at the time of the passage of the act of 1843, for the settlement of estates in the orphans' court, the law previously existing will govern and control it ; but where the initiary steps only have been taken, the proceeding so far as it has progressed, will be governed by the former law, but so far as subsequent action is had, it must conform to the act of 1843. [See also Branch Bank at Huntsville v. Steele, 10 Ala. Rep. 915.] In the case before us it appears, that no progress had been made in the settlement of the estate when the act of 1843 was passed—that only a report of insolvency had been recognized, and an order of publication made, which was never acted on. Under these circumstances, the proceedings should have been conducted pursuant to the act cited.

The record, it is true, does not state in so many words, that the claim of the bank had been presented to the administrators within eighteen months from the grant of the letters of administration ; yet this is not a fatal error. The commissioners, in virtue of an act of the legislature, are substituted *pro hac vice*, for the judge of the county court, who is excused, because of his interest in the controvesy. Their powers in respect to the matter in hand, are the same as those exercised by the judge in the performance of similar duties. [Clay's Dig. 305, § 46, 47.] It may be conceded, that the record should show that the matter was not *coram non judice*, and that the proceedings were regular ; but need not recite *in detail the proof of every fact* that should have been shown, to entitle a creditor to an allowance of his claim, although the court may be one of limited and defined powers. If the claim had not been duly presented, or the estate was not chargeable with its payment, the administrators should have objected to it, and if overruled, have caused their exception to have been placed upon the record.

The sum allowed to the bank is not uncertain, as the counsel for the plaintiff in error supposes, and if the decree allowing it, is proper, we can conceive of no objection to the award of execcution. If the act of 1843 does not *in totidem verbis,* direct decrees rendered under its authority to be thus enforced, does not the statute of 1830 invest the orphans' court with the power to enforce its decree, by the appropriate writ of execution ? The third section, to say nothing of other more special provisions, enacts that "the county and orphans' court respectively, shall have full power and authority to issue writs of attachment, or other writs necessary to enforce their orders, judgments and decrees." [Clay's Dig. 305, § 49.] The orders and decrees, made under the act of 1843, as to the mode of their execution, are as much subject to the act of 1830, as if the terms of the latter had been embraced by it. Both of the statutes are in *pari materia,* and must operate together.

In the transcript there is a paper signed by counsel for the administrator, stating in form, a distinct objection why the claim of the bank should not be allowed. To which there is a response commencing thus : "and the said Gayle, in short, by consent, pleads and takes issue to the first objection above, &c.," and denies or admits and avoids each one of the others in consecutive order ; but this paper is not signed by counsel, and does not conclude as a plea. There is nothing in the record to indicate that these papers were in any manner recognized by the commissioners, or even brought to their notice. It was clearly competent for the administrator, under the act of 1843, to object to the allowance of any claim against the estate, by filing in the clerk's office an objection in writing ; "and thereupon the court shall cause an issue to be made up between such claimant as plaintiff, and the administrator or the contesting creditor, in the name of the administrator, as defendant, by pleading thereon, in the same manner as if the claimant had sued the administrator at common law ; and such issue shall be tried as at common law, &c." (Clay's Dig. 194, § 11.) Although the administrator may have filed objections pursuant to the statute, still he should have called the attention of the commissioners to them, that they might have directed the appro-

priate pleading and issues. The administrator, in legal contemplation, was in court from the initiation to the close of the proceeding—at least on the days appointed for the action of the commissioners ; and if he desired the bank to plead to his objections, that they might be passed on by a jury, he should have objected to the decree of the court, until a verdict was rendered. But having acquiesced in its action, without the intervention of a jury, he cannot be heard to insist that his objections were disregarded—not having pressed them at the proper time, or shown by the record that the court refused to entertain them, he must be taken to have waived them.

As for the objection that the record does not show that the Branch Bank was the proprietor of the claim upon which a decree was rendered in its favor, it is enough to say that it does not prove the reverse. This being so, what we have said as to the absence of proof of the presentation of the claim to the administrator within eighteen months, will apply with all force, and show that the point is not well taken. This view is decisive of the cause, and the decree is consequently affirmed.