## MEASURE OF DAMAGES FOR FAILURE TO TAKE ENTIRE ISSUE OF CAPITAL STOCK.

Circuit Court of Cuyahoga County.

THE DAVIS LAUNDRY & CLEANING COMPANY v. F. C. WHITMORE.

Decided, December 16, 1912.

*Damages for Breach of Contract in Sale of Chattels.*

Where there has been a breach of a contract for the purchase of all the capital stock of a corporation, the measure of damages to which the seller is entitled is the difference between the contract price and the market price of the stock at the time of the breach; and where there has been no acceptance of the stock or transfer of the same on the books of the company, the seller is not entitled to recover the full contract price.

*Ford, Snyder & Tilden,* for plaintiff in error.
*Cook, McGowan & Foote,* contra.

MARVIN, J.; WINCH, J., and MEALS, J., concur.

Whitmore, hereinafter spoken of as the plaintiff, brought suit against the Davis Laundry & Cleaning Co., hereinafter spoken of as the defendant, claiming to recover the sum of $11,700 as the purchase price of 250 shares of the capital stock of the Ideal Laundry Co., a corporation which was doing a laundry business at the city of Lorain, Ohio, where it had a plant with machinery, delivery wagons, horses, etc., the plaintiff alleging that he had sold to the defendant said entire 250 shares, which was the entire capital stock of said the Ideal Laundry Co.

At the time that it is alleged the defendant purchased said stock, a writing was executed, signed by the defendant, reading:

"We agree to purchase 126 shares of Ideal Laundry stock for $5,500, and the balance of 124 shares at $50 per share from F. C. Whitmore."

This was signed by an officer of the defendant, who, it was conceded in the record, was authorized to act for the defendant in the purchase of this stock.

This writing was dated the 11th of January, 1910. One hundred and twenty-six shares of this stock were owned by the plaintiff at the time of the execution of the writing. The remaining 124 shares were owned by other parties.

It will be noticed that the writing does not set out an entire contract, because there is no time fixed for the delivery of and payment for the stock, nor is any place for such delivery or payment fixed in the contract; but the evidence is that the place of delivery was fixed between the parties as the National Bank of Commerce, of Lorain, and that payment was there to be made for the stock.

On the part of the plaintiff the evidence is that the plaintiff was to deliver this stock as soon as he could procure the shares of which he was not the owner, which he said he would be able to do very soon.

On the part of the defendant the evidence is that the plaintiff agreed to deliver this stock within a very few days.

On or about the 1st day of February, 1910, the plaintiff deposited with the bank named 243 shares of the Ideal Laundry Company's stock and notified the defendant of such deposit. The defendant then took possession of the plant of the Ideal Company at Lorain and operated it until the 19th day of February, 1910. On said last named date the defendant notified the plaintiff that it would not take the stock and pay for it.

At that time the plaintiff was unable to deposit with the bank certificates for the remaining eight shares of stock, five of which shares were owned by one Truby, then residing in Chicago, and three owned by one Daniels, residing in Florida. The defendant knew that the plaintiff was endeavoring faithfully to secure these eight shares of stock.

On the 21st day of February, 1910, the plaintiff formally notified the defendant that 242 shares were on deposit at the bank and offered to furnish a bond for the delivery of the remaining 8 shares within ten days thereafter.

On the 28th day of February, 1910, the plaintiff had secured the remaining 8 shares of stock to be deposited with the bank, so that then the entire 250 shares were on deposit with the bank for delivery to the defendant upon its paying the agreed price

therefor, and this fact was given to the defendant in writing by the plaintiff, and a demand was made for payment of the entire purchase price of the 250 shares. The defendant refused to accept and pay for the stock. The case went to trial with the result that the plaintiff recovered a judgment for the entire agreed price for the 250 shares.

It is clear from the evidence that what the defendant desired, in entering into the contract, was that it should become the owner of all the property of the Ideal Company, so that it might carry on the laundry business at the plant and with the facilities which the Ideal Company theretofore had, and this fact was well known to the plaintiff, and each party acted with this in view.

On the part of the defendant it is urged that the court erred in its charge to the jury in this:

"Now, gentlemen, if you should find under the rules I have given you, that the plaintiff had procured and had ready for delivery at the place of delivery, within a reasonable time, the entire output of the Ideal Laundry Co., to-wit, 250 shares, then he would be entitled to recover the contract price of whatever is set out in the petition, $11,700, or whatever the amount is."

In giving this charge to the jury we think there was error. We hold that if the defendant on the 19th day of February notified the plaintiff that it would not accept this stock, this being at a time when the plaintiff not only had not tendered delivery of the entire amount, but was unable to do so, if the plaintiff was entitled to recover at all he was entitled to recover because of a breach of the contract on the part of the defendant, and his measure of damages would be the amount which the contract price was in excess of the market value of the stock at the time of this breach, if the stock then had a market value less than the agreed contract price.

In support of the rule as to the measure of damages, attention is called to the following authorities:

In 35 Cyc., 592, the language of the text is:

"The general rule is that the measure of damages, when the buyer repudiates the contract and refuses to receive and accept the goods, is the difference between the contract price and the

market value of the goods at the time and place of delivery, and not the full contract price of the goods." ·

In support of this, the author cites a large number of cases, one from Alabama, several from Arkansas, several from California, one from Connecticut, and others from Georgia, Illinois, Michigan, Missouri, Nebraska, New Hampshire, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and many others.

Among the authorities cited is *Cullen* v. *Bimm*, 37 O. S., 236, in the first clause of the syllabus of which the following language is found:

"If a vendee refuses to accept personal property tendered in accordance with the terms of the contract of sale, he is liable in damages for the difference between the contract price and its market value."

It is true, that the court says, in its opinion, "that whether the plaintiff could have held the ice for the defendant and recover the contract price, is a question which we need not determine," but they call attention to other cases in Ohio, among them *Turnpike Co.* v. *Coy*, 13 O. S., 84, where this language is used in the syllabus:

"Whether an action lies for the price of property sold instead of damages upon the refusal to receive the same, is doubted, for the seller would get the price and still hold the title; title will not pass without assent."

They cite, also the case of *Shawhan* v. *Van Nest*, 25 O. S., 489. This was an action brought by one who furnished the materials and constructed a carriage for the defendant in accordance with his order and direction, for which a stipulated price was to be paid. The defendant refused to receive and pay for it. In that case it was held that the defendant was liable for the contract price, and the reason is apparent, that the defendant had built especially for him a carriage; he had been put to expense of both labor and material for an article which might not be wanted by anybody else; built it especially for the defendant,

it might very well be without market price, and so it was held that the defendant must pay the contract price.

But in the opinion the court calls attention to the distinction between the sale of ordinary property and the construction of a specific article upon a contract, and cites, with approval, the case of *Gordon* v. *Noris,* 49 N. H., 376, quoting from the syllabus the following language:

"Where the vendee refuses to receive and pay for ordinary goods, wares and merchandise, which he has contracted to purchase, the measure of damages which the vendor is entitled to recover is not ordinarily the contract price for the goods, but the difference between the contract price and the market value, or the value of the same goods at the time when the contract was broken."

In the case of *Andrews* v. *Watson,* 12 C. D., 686, it is said:

"The measure of damages in an action to recover for the refusal of the purchaser of certain shares of stock, to pay for the same where there was no delivery of the stock or transfer on the books of the corporation, by delivery of the certificate thereof, or tender made prior to the commencement of the action, is the difference between the contract price and the market value of the same, and not the sum stipulated to be paid for the stock."

The same case was reheard, and is reported in the same volume at page 692. The language used in the syllabus reads, in part:

"Where the purchaser repudiated the contract and thereby waived the straight performance thereof, the seller is entitled to recover the difference between the market value and the contract price as damages for the breach of the contract."

This case is affirmed, without report, in 51 O. S., 619.

In *Sedgwick on the Measure of Damages,* 9th Ed., Sec. 753, this language is used:

"Where the title has not passed, the measure of damages is the difference between the contract and the market price of the article at the time and the place where it should have been accepted."

In the 7th edition of *Benjamin on Sales*, it is said at Section 758:

"When the vendor has not transferred to the buyer the property in the goods which are the subject of the contract, as has been explained in Book 2, as where the agreement is for the sale of goods not specific, or of specific goods which are not in a deliverable state, or which are to be weighed or measured before delivery, the breach of the buyer of his promise to accept and pay, can only affect the vendor by way of damages. The goods are still his; he may resell or not, at his pleasure, but his only action against the buyer is for damages for non-acceptance. He can in general only recover the damage that he has sustained in the fallen price of the goods."

This and other authorities which are cited in the notes to the authorities from which we have quoted, justify, as we think, the conclusion reached as stated earlier in the opinion.

True, Williston in his Work on Sales shows that the rule here adopted is by no means universal, and that there are very respectable authorities to the contrary. The sections quoted in the brief of the plaintiff, especially Section 565, are to the effect that the rule here adopted does not commend itself to the author, and has been rejected by many courts of the highest standing.

We are not prepared, however, to depart from the general rule, as stated in the authorities from which we have quoted.

Exception is taken to a number of the rulings on evidence by the court, which we have examined and find, as we think, no substantial error in any ruling, except rulings as shown at pages 79 and 80 of the bill of exceptions.

It must not be forgotten that the defendant took possession of the plant of the Ideal Company and operated it from the 1st to the 19th day of February, 1910, at a time when 242 shares of the capital stock had been deposited with the bank for the purpose of delivering it to the defendant. Because of this fact, it was urged on the part of the plaintiff that the defendant had accepted the partial performance by the plaintiff, either as showing that the defendant recognized that the plaintiff was duly performing, or as an acceptance of so much as had been deposited as a performance to so full an extent that the defendant

would accept it and pay for the shares so deposited. In short, that because of the action of the defendant in taking charge of this business at Lorain, it relieved the plaintiff from full performance, and was bound to accept and pay for the 242 shares in any event, and to accept and pay for the entire 250 shares if the remaining 8 shares should be produced within a reasonable time.

A witness produced by the plaintiff, to-wit, B. H. Braun, was being cross-examined by counsel for the defendant. Braun had been in the employ of the Ideal Company during the time that the plant was operated by the defendant. Braun was in its employ in the management of the laundry at Lorain, and was paid by that company. This had been shown as tending to show an acceptance by the Davis Company. The Davis Company discontinued the operation of the plant, as already said, on the 19th day of February, 1910, and this question was put to Braun on cross-examination:

"Q. After the 19th day of February, 1910, after the Davis Laundry Co. people left, from whom did you get your pay, after that time for your services at the laundry?"

This being upon a cross-examination, it was not required of counsel to state what answer he expected would be given. The rule in such case is that any answer which would be competent may be presumed in favor of the party asking the question.

Suppose the answer to this question had been: "I received my pay from the Ideal Laundry Co." It would tend to show that that company did not regard the ownership of the property as having passed out of its hands to the Davis Company.

Further on he was asked, having stated that the plant was operated after the 19th of February:

"Q. Who got the returns from it?"

Objection was sustained to this.

A competent answer would have been, "The Ideal Laundry Co. got the returns," or, "The plaintiff got the returns," either of which might tend to show what it is suggested the answer to the former question might have tended to show, or the answer to either of these questions might have been that the plaintiff received the returns.

Similar questions of the same kind were asked of this witness, and an objection made by the plaintiff sustained, to which an exception was taken.

We think there was error in sustaining these objections. We think answers might have been given which would tend to weaken the claim made by the plaintiff that the defendant, by its action, had recognized that the contract was so far complete that it was bound by it, by tending to show that either the plaintiff or the Ideal Company had not yielded up its ownership of the property.

Complaint is made that the court charged that the plaintiff was entitled to a reasonable time in which to procure and deliver the 250 shares of stock.

We think that whether the agreement was that it should be delivered as soon as the plaintiff could get it together, or that it should be delivered in a few days, would have been fully complied with by delivery within a reasonable time, that is to say, plaintiff should have had a reasonable time to procure that stock which it was known to the defendant he did not own, and that he must obtain it from others. We find no error in that part of the charge.

The judgment is reversed for error in charging that the measure of damages to which the plaintiff was entitled was the contract price, and for error in ruling on evidence as herein pointed out.